**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>VIEW, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-10692 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 16 and 179** |

**MEMORANDUM OF LAW IN SUPPORT OF (I) APPROVAL OF DEBTORS'
DISCLOSURE STATEMENT AND (II) CONFIRMATION OF THE DEBTORS'
PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

Patrick J. Reilley (DE Bar No. 4451)
Stacy L. Newman (DE Bar No. 5044)
Michael E. Fitzpatrick (DE Bar No. 6797)
**COLE SCHOTZ P.C.**
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:     (302) 625-3131
Facsimile:      (302) 325-3117
Email:           preilly@coleschotz.com
                    snewman@coleschotz.com
                    mfitzpatrick@coleschotz.com

Michael D. Sirota (admitted *pro hac vice*)
David M. Bass (admitted *pro hac vice*)
Daniel J. Harris (admitted *pro hac vice*)
Matteo Percontino (admitted *pro hac vice*)
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
Facsimile:      (201) 489-1536
Email:           msirota@coleschotz.com
                    dbass@coleschotz.com
                    dharris@coleschotz.com
                    mpercontino@coleschotz.com

Bryant P. Churbuck (admitted *pro hac vice*)
**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Floor
New York, NY 10010
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
bchurbuck@coleschotz.com

*Counsel to the Debtors
and Debtors in Possession*

Dated: May 15, 2024

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: View, Inc. (5065), View Operating Corporation (4899), and Iotium, Inc. (4600).  The Debtors' corporate headquarters is 6280 America Center Drive, Suite 200, San Jose, CA 95002.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND .............................................................................................................2

ARGUMENT ..................................................................................................................8

I.     THE DISCLOSURE STATEMENT SHOULD BE APPROVED AS CONTAINING "ADEQUATE INFORMATION" IN SATISFACTION OF SECTION 1125 OF THE BANKRUPTCY CODE AND MEETING THE REQUIREMENTS OF BANKRUPTCY RULE 3016(C)....................................................9

     A.    Parties in Interest Received Sufficient Notice of the Confirmation Hearing and Objection Deadline............................................................9

     B.    The Disclosure Statement Satisfies Requirements of Bankruptcy Code ..............10

     C.    The Disclosure Statement Contains Adequate Information and Should be Approved.............................................................................................11

     D.    The Prepetition Solicitation of Votes Complied with the Bankruptcy Code, Bankruptcy Rules, Applicable Nonbankruptcy Laws, and the Procedures Order ....................................................................................12

          1.    The Ballots Used to Solicit Holders of Claims and Interests Entitled to Vote on the Prepackaged Plan Complied with Bankruptcy Rules.........13

          2.    The Voting Record Date Complied with Bankruptcy Rules ....................14

          3.    The Debtors' Vote Tabulation was Appropriate........................................14

          4.    Solicitation Complied with the Bankruptcy Code and Was in Good Faith ........................................................................................15

          5.    Prepetition Solicitation Complied with Applicable Nonbankruptcy Law ............................................................................................15

II.    THE PREPACKAGED PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE...............................................................................16

     A.    The Prepackaged Plan Complies with All Applicable Provisions of the Bankruptcy Code – 11 U.S.C. § 1129(a)(1)............................................17

          1.    The Classification of Claims and Interests in the Prepackaged Plan Satisfies the Requirements of Section 1122 of the Bankruptcy Code ....................................................................................................17

2.      The Prepackaged Plan Satisfies the Requirements of Section 1123(a) of the Bankruptcy Code.................................................19

3.      The Prepackaged Plan Complies with the Requirements of Section 1123(b) of the Bankruptcy Code.................................................20

       a.      The Prepackaged Plan's Discretionary Provisions are Consistent with Section 1123(b) of the Bankruptcy Code.............20

       b.      The Debtor Release, Third-Party Release, Exculpation, and Injunction Provisions Should Be Approved ...............................21

            (i)      Debtor Release (Article VIII.C of the Prepackaged Plan) ...............................................................................22

            (ii)     The Third-Party Release (Article VIII.D).........................27

            (iii)    Exculpation (Article VII.E of the Prepackaged Plan)........32

            (iv)     Injunction (Article VIII.D of the Prepackaged Plan).........35

4.      The Prepackaged Plan Complies with the Requirements of Section 1123(d) of the Bankruptcy Code.................................................35

B.      The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code – 11 U.S.C. § 1129(a)(2)....................................36

C.      The Prepackaged Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law – 11 U.S.C. § 1129(a)(3) .............................36

D.      The Prepackaged Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval – 11 U.S.C. § 1129(a)(4) ...........................................................................37

E.      The Debtors Have Disclosed the Identity of Directors and Officers and the Nature of Compensation of Insiders – 11 U.S.C. § 1129(a)(5) ...........................38

F.      The Prepackaged Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6) ...........................................................................39

G.      The Prepackaged Plan is in the Best Interests of Creditors – 11 U.S.C. § 1129(a)(7) ...........................................................................40

H.      Although the Requirements of Section 1129(a)(8) Are Unmet, the Prepackaged Plan Should be Confirmed Because the Requirements of Section 1129(b) Are Satisfied – 11 U.S.C. § 1129(a)(8) .....................................41

       a.      Section 1129(b)(1) – The Prepackaged Plan Does Not Discriminate Unfairly ...................................................42

b.      Section 1129(b)(2) – The Prepackaged Plan is Fair and Equitable ......................................................................................43

I.      The Prepackaged Plan Provides for Payment in Full of All Allowed Priority Claims – 11 U.S.C. § 1129(a)(9) ...........................................................44

J.      At Least One Impaired, Non-Insider Class Has Accepted the Prepackaged Plan – 11 U.S.C. § 1129(a)(10)...................................................................45

K.      The Prepackaged Plan is Feasible – 11 U.S.C. § 1129(a)(11) .............................45

L.      All Statutory Fees Have Been or Will Be Paid – 11 U.S.C. § 1129(a)(12) ...........46

M.      Section 1129(a)(13) of the Bankruptcy Code Is Inapplicable ...............................47

N.      Sections 1129(a)(14)–(16) of the Bankruptcy Code are Inapplicable...................47

O.      The Prepackaged Plan Is Not an Attempt to Avoid Tax Obligations – 11 U.S.C. § 1129(d) ....................................................................................47

III.      CAUSE EXISTS TO WAIVE ANY STAY OF PROPOSED CONFIRMATION ORDER ........................................................................................................48

CONCLUSION.........................................................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship.*,
190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434
(1999) ............................................................................................................42

*In re Armstrong World Indus., Inc.*,
432 F.3d 507 (3d Cir. 2005) ..........................................................................41

*In re Arsenal Intermediate Holdings, LLC*,
2023 WL 2655592 (Bankr. D. Del. Mar. 27, 2023) ......................................30

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) ........................................................42

*In re Century Glove*,
1993 WL 239489 (D. Del. Feb. 10, 1993) .....................................................37

*Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*,
279 B.R. 145 (Bankr. D. Del. 2002) ..............................................................20

*In re Coram Healthcare Corp.*,
271 B.R. 228 (Bankr. D. Del. 2001) ..............................................................37

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ..............................................................18

*In re Exide Tech.*,
303 B.R. 48 (Bankr. D. Del. 2003) ...............................................17, 20, 25, 42

*Gruen Mktg. Corp. v. Asia Commercial Co., Ltd.* (*In re Jewelcor Inc.*),
150 B.R. 580 (Bankr. M.D. Pa. 1992) ...........................................................21

*Heroes World Dist., Inc. v. MAFCO Holdings, Inc.* (*In re Marvel Entm't Grp.,
Inc.*),
273 B.R. 58 (D. Del. 2002) .............................................................................25

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ..........................................................25, 30

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987) .........................................................................18

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.*,
987 F.2d 154 (3d Cir. 1993) ...........................................................................18

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
    843 F.2d 636 (2d Cir. 1988)................................................................................41

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,*
    337 F.3d 314 (3d Cir. 2003)................................................................................11

*Lisanti v. Lubetkin (In re Lisanti Foods, Inc.),*
    329 B.R. 491 (D.N.J. 2005) ................................................................................38

*In re Master Mortg. Inv. Fund, Inc.,*
    168 B.R. 930 (Bankr. W.D. Mo. 1994)..............................................................25

*In re NII Holdings, Inc.,*
    288 B.R. 356 (Bankr. D. Del. 2002) ..................................................................37

*In re Nutritional Sourcing Corp.,*
    398 B.R. 816 (Bankr. D. Del. 2008) ..................................................................17

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
    848 F.2d 414 (3d Cir. 1988)................................................................................11

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture),*
    995 F.2d 1274 (5th Cir. 1991) ............................................................................18

*In re PWS Holding Corp.,*
    228 F.3d 224 (3d Cir. 2000)................................................................................36

*In re Resorts Int'l, Inc.,*
    145 B.R. 412 (Bankr. D.N.J. 1990) ...................................................................38

*In re Sea Launch Co., L.L.C.,*
    2010 Bankr. LEXIS 5283 (Bankr. D. Del. July 30, 2010)..................................48

*In re Tribune Co.,*
    2020 WL 5035797 (3d Cir. Aug. 26, 2020)........................................................42

*In re Tribune Co.,*
    464 B.R. 126 (Bankr. D. Del. 2011) ..................................................................17

*U.S. Bank. Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion),*
    426 B.R. 114 (Bankr. D. Del. 2010) ..................................................................25

*In re W.R. Grace & Co.,*
    475 B.R. 34 (D. Del. 2012) ................................................................................40

*In re Washington Mut., Inc.,*
    442 B.R. 314 (Bankr. D. Del. 2011) ..................................................................25

*In re Zenith Elec. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ...............................................................................25, 26

**Statutes**

11 U.S.C. § 1123(b)(5) ........................................................................................................20

11 U.S.C. § 1125(b) ...........................................................................................................11

11 U.S.C. § 1129(a)(4) ........................................................................................................38

11 U.S.C. § 1129(a)(5)(A)(i)–(ii) ........................................................................................39

11 U.S.C. § 1129(a)(6) ........................................................................................................40

11 U.S.C. § 1129(a)(7) ........................................................................................................40

11 U.S.C. § 1129(a)(8) ........................................................................................................41

11 U.S.C. § 1129(a)(9) ........................................................................................................44

11 U.S.C. § 1129(a)(10) ......................................................................................................45

11 U.S.C. § 1129(a)(11) ......................................................................................................45

11 U.S.C. § 1129(a)(12) ......................................................................................................47

11 U.S.C. § 1129(d) ............................................................................................................48

15 U.S.C. § 77d(a)(2) ..........................................................................................................15

Bankruptcy Code Section 105(d)(2)(B)(vi) ..........................................................................9

Bankruptcy Code Section 1122(a) ......................................................................................18

Bankruptcy Code Section 1123(a) ......................................................................................19

Bankruptcy Code Section 1123(b)(3)(A)........................................................................20, 24

Bankruptcy Code Section 1125(e) ......................................................................................15

Bankruptcy Code Section 1125(g)......................................................................................10

Bankruptcy Code Section 1126(b) ......................................................................................10

Bankruptcy Code Section 1126(g)......................................................................................42

Bankruptcy Code Section 1129(b)(2) ................................................................................43

**Other Authorities**

FED. R. BANKR. P. 2002(b) ...........................................................................................................9

FED. R. BANKR. P. 3017(a)...........................................................................................................9

FED R. BANKR. P. 3017(d) ..........................................................................................................13

FED. R. BANKR. P. 3018(b) ..........................................................................................................14

FED. R. BANKR. P. 3018(c)...........................................................................................................14

FED. R. BANKR. P. 3020(e)...........................................................................................................48

FED. R. BANKR. P. 3020(e)...........................................................................................................49

FED. R. BANKR. P. 6004(h) ..........................................................................................................49

View, Inc. and its debtor affiliates in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession, submit this memorandum of law (the "Memorandum") in support of their request for entry of an order (the "Confirmation Order") (i) approving, on a final basis, the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of View, Inc. and its Debtor Affiliates* [D.I. 16] (the "Disclosure Statement"); (ii) approving, on a final basis, the solicitation procedures (collectively, the "Solicitation Procedures") and form of ballots;[2] and (iii) confirming the *Amended Joint Prepackaged Chapter 11 Plan of Reorganization of View, Inc., and its Debtor Affiliates* [D.I. 179] (as amended, supplemented or modified from time to time, the "Prepackaged Plan"),[3] including the agreements and other documents set forth in that certain supplement to the Prepackaged Plan [D.I. 137] (as modified, amended, or supplemented from time to time, the "Plan Supplement").

## PRELIMINARY STATEMENT

1.      The Debtors commenced these prepackaged Chapter 11 Cases to achieve a comprehensive financial restructuring to deleverage and recapitalize the Debtors' balance sheet. To effectuate these transactions contemplated by the Prepackaged Plan in a timely and efficient manner, the Debtors are now seeking to expeditiously confirm the Prepackaged Plan, which has the overwhelming support of all of the Voting Classes (as defined below).

2.      The Prepackaged Plan results from good-faith arm's-length negotiations among the Debtors, the majority of the Debtors' prepetition convertible noteholders, lenders to the Debtors' term loan facility, and other parties to the Restructuring Support Agreement. Among

---

[2]   The Procedures Order (as defined herein) approved the Solicitation Procedures and form of ballots on a conditional basis.

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan or the Confirmation Order, as applicable.

other key features, the restructuring transactions contemplated by the Prepackaged Plan provide for, among other things, (i) equitization of over $274 million in prepetition debt; (ii) in addition to rolled DIP Claims, an additional $32.5 million of new money to be funded pursuant to the New Exit Facility; and (iii) payment of all General Unsecured Claims in full. Confirmation of the Prepackaged Plan is supported by the overwhelming majority of the Debtors' stakeholders and represents the most value-maximizing transaction available to the Debtors.

3.      As discussed in detail below, the Prepackaged Plan satisfies each of the Bankruptcy Code's confirmation requirements. Plan confirmation is supported by the overwhelming majority of the Debtors' stakeholders; indeed, as noted herein, the Debtors have resolved all but three (3) formal or informal objections and anticipate resolving the remaining objections prior to the Confirmation Hearing. The Debtors will file a revised proposed Confirmation Order prior to the Confirmation Hearing inclusive of such resolutions. For the reasons set forth herein and in the Declarations (as defined below), the Court should approve the Disclosure Statement on a final basis and enter the proposed Confirmation Order.

## **BACKGROUND**

4.      The pertinent facts relating to the commencement of these Chapter 11 Cases are set forth in the Disclosure Statement. Prior to or contemporaneously with the filing of this Memorandum, the Debtors also filed the following documents in support of confirmation of the restructuring transactions, confirmation of the Prepackaged Plan, approval of the Disclosure Statement, and final approval of the Solicitation Procedures:

    i.   Declaration of Thomas King in Support of Chapter 11 Petitions and First Day Pleadings [D.I. 19] (the "First Day Declaration");

    ii.  *Affidavit of Service* by Herb Baer of Kroll Restructuring Administration LLC [D.I. 54];

    iii.   *Affidavit of Service of Solicitation Materials* by Craig E. Johnson of Kroll Restructuring Administration LLC [D.I. 90] (the "<u>Solicitation Affidavit</u>");

    iv.   *Certificate of Publication* by Justin Lewinson of Kroll Restructuring Administration LLC [D.I. 91] (the "<u>Publication Affidavit</u>");

    v.   *Notice of Filing of Plan Supplement* [D.I. 137];

    vi.   *Declaration of Thomas King in Support of Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* filed contemporaneously herewith (the "<u>King Declaration</u>"); and

    vii.   *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of View, Inc. and its Debtor Affiliates* [D.I. 158] (the "<u>Voting Certification</u>", and together with the above King Declaration, the "<u>Declarations</u>").

5.    On April 2, 2024, the Debtors entered into a restructuring support agreement (as may be amended from time to time, and including all exhibits thereto, the "<u>Restructuring Support Agreement</u>") with (a) 100 percent of the holders of the outstanding principal of the Debtors' prepetition term loans, (b) holders of 90.3 percent of the outstanding principal of the Debtors' prepetition convertible notes, and (c) certain non-debtor affiliates and guarantors (the parties in the foregoing clauses (a) through (c), the "<u>Consenting Creditors</u>"), pursuant to which the Debtors agreed to commence these Chapter 11 Cases to implement the transactions contemplated therein. *See* First Day Decl. ¶ 41.  Pursuant to the Restructuring Support Agreement, the Consenting Creditors agreed to vote in favor and/or support confirmation of the Prepackaged Plan, among other things.  *See id.* ¶ 47.

6.    The following is a brief overview of the Prepackaged Plan and is qualified in its entirety by reference to the Prepackaged Plan.  As detailed in the First Day Declaration, the Prepackaged Plan contemplates:

- $17.5 million of DIP Financing provided by the lenders under the Prepetition Term Loan that will be rolled into the New Exit Facility at closing of the Prepackaged Plan;

- In addition to the rolled DIP Claims, an additional $32.5 million of new money to be funded pursuant to the New Exit Facility;

- Equitization of over $274 million of Prepetition Term Loan Claims and Prepetition Convertible Notes Claims into 64.2% of the equity of New Top Co (which may be either Reorganized Parent or a new entity holding 100% of the equity interest of Reorganized Parent);

- Issuance of 35.8% of New Common Interests to the Exit Lenders that provide the Tranche C Commitment, as more fully described in the Restructuring Support Agreement and the New Exit Facility Term Sheet;

- Payment in full in the ordinary course of the Debtors' ongoing business of all General Unsecured Claims, including employee and trade claims; and

- Prompt emergence from chapter 11.

7.    Prior to commencing these Chapter 11 Cases, on or about April 2, 2024 (the "Service Date"), the Debtors commenced the solicitation of votes to accept or reject the Prepackaged Plan from the Voting Classes by causing Kroll Restructuring Administration, LLC, the voting agent in the Chapter 11 Cases ("Kroll" or the "Voting Agent"), to distribute by electronic mail a solicitation package (the "Solicitation Package") containing the Combined Hearing Notice, applicable ballots with voting instructions (the "Ballots"), and the Solicitation Notice (as defined in the Procedures Order) [D.I. 17] to Holders of Claims in Class 4 (Prepetition Term Loan Claims) and Class 5 (Prepetition Convertible Notes Claims) (collectively, the "Voting Classes") as of April 1, 2024 (the "Voting Record Date").

8.    On April 2, 2024 (the "Petition Date"), the Debtors filed the Prepackaged Plan, the Disclosure Statement, and the Solicitation Procedures Motion, pursuant to which the Debtors sought, among other things, a combined hearing on final approval of the Disclosure Statement and confirmation of the Prepackaged Plan (the "Confirmation Hearing"). On April 4, 2024, the Court

entered an Order [D.I. 68] (the "Procedures Order"), pursuant to which the Court, among other things, (i) scheduled the combined hearing to consider the approval of the Disclosure Statement and confirmation of the Prepackaged Plan, (ii) established the prepackaged plan and disclosure statement objection deadline, (iii) approved the Solicitation Procedures and Ballots, (iv) approved the form and manner of notice of the combined hearing, objection deadline, and notice of commencement, and (v) approved the notice and objection procedures for the assumption of executory contracts and unexpired leases.

9.     The Disclosure Statement and the instructions directed the Holders in the Voting Classes to cast their votes to accept or reject the Prepackaged Plan by following the instructions contained in the Ballots to provide that the Ballots be properly executed, completed, and delivered so that they would be received no later than 5:00 p.m. prevailing Eastern Time on May 2, 2024 (the "Voting Deadline").  Each Ballot also contained detailed instructions on how to complete it and how to make any applicable elections contained therein, including how to opt out of the Third-Party Release (as defined below).  After the Voting Deadline, and following a complete review by Kroll of the Ballots received, Kroll finalized the tabulation of the Ballots.  Below is a chart summarizing the voting results.

| Class | Class Description | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting | Class Voting Result |
|-------|-------------------|------------------|------------------|------------------|------------------|---------------------|
|       |                   | %                | %                | %                | %                |                     |
| 4 | Prepetition Term Loan Claims | 14 | 0 | $27,108,298.86 | $0.00 | Accept |
|   |   | 100% | 0% | 100% | 0% |   |
| 5 | Prepetition Convertible Notes | 17 | 0 | $219,691,645.00 | $0.00 | Accept |
|   |   | 100% | 0% | 100% | 0% |   |

10.      The Debtors did not solicit votes on the Prepackaged Plan from Holders of Claims or Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (Prepetition MDA Loan Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), Class 8 (Existing Equity Interests), or Class 9 (Intercompany Interests) (collectively, the "Non-Voting Classes").  Holders of Claims and Interests in Classes 1, 2, 3, and 6 are Unimpaired and are presumed to accept the Prepackaged Plan.  Holders of Claims and Interests in Class 8 will receive no distribution pursuant to the Prepackaged Plan, are Impaired and are deemed to reject the Prepackaged Plan.  Holders of Claims and Interests in Classes 7 and 9 are presumed to accept or deemed to reject the Prepackaged Plan and are not entitled to vote on the Prepackaged Plan.

11.      In accordance with the Procedures Order, on or about April 8, 2024, the Voting Agent mailed the Non-Voting Classes the Notice of Combined Hearing, which sets forth (i) the date, time, and place of the Confirmation Hearing, (ii) a summary of the Prepackaged Plan and the treatment of such Non-Voting Classes, (iii) the procedures and deadline for submitting an objection to approval of the Disclosure Statement or confirmation of the Prepackaged Plan, and (iv) the manner in which a copy of the Prepackaged Plan and Disclosure Statement may be obtained.  A shortened version of the Combined Hearing Notice was also published in the *New York Times*, *National Edition* on April 8, 2024, in accordance with the Procedures Order.  The Prepackaged Plan and Disclosure Statement were also made available at no cost on the Voting Agent's website at https://cases.ra.kroll.com/view/.  In addition to the Combined Hearing Notice, on or about April 8, 2024, the Voting Agent also served Holders of Claims and Interests in the Non-Voting Classes (other than Classes 7 and 9) with (i) a notice of non-voting status (the "Notice of Non-Voting Status") and (ii) an opt out form that allowed the Holders of Claims and Interests to opt out of the third-party releases (the "Opt-Out Form"), which form contained the full text of the

release, exculpation, and injunction provisions set forth in Article VIII of the Prepackaged Plan and advised such Holders that they would be deemed to have consented to the non-debtor release provision in Article VIII of the Prepackaged Plan unless they timely and properly opted out of such release.

12.     On April 17, 2024, Kroll filed the *Affidavit of Service of Solicitation Materials* [D.I. 90] evidencing the service of the Prepackaged Plan, the Disclosure Statement, the Class 4 Ballot, the Class 5 Ballot, and the Solicitation Notice on the Voting Classes, in accordance with the terms of the Procedures Order.

13.     On April 25, 2024, the Debtors filed the Plan Supplement [D.I. 137], which contained (i) a summary of the proposed terms and conditions for the New Exit Facility Credit Agreement, (ii) the governance terms for Reorganized View, Inc., (iii) the Schedule of Retained Causes of Action, (iv) to the extent known, information regarding the identity of the members of the New Board and Officers of the Reorganized Debtors, and (iv) the Schedule of Rejected Executory Contracts and Unexpired Leases.  Kroll has served the Plan Supplement on the master service list maintained by Kroll.

14.     As described in greater detail below, the Prepackaged Plan was accepted by the Voting Classes, with the Debtors having received unanimous support for the Prepackaged Plan.

15.     Pursuant to the Procedures Order, the deadline to file and serve any objection to the Disclosure Statement or the Prepackaged Plan was May 6, 2024 at 4:00 p.m. (ET) (the "Confirmation Objection Deadline").  Prior to the Confirmation Objection Deadline, four formal objections were filed to the Prepackaged Plan as follows: (i) *Limited Objection and Reservation of Rights of QPP LLC in Response to Confirmation of Joint Prepackaged Chapter 11 Plan of Reorganization of View, Inc., and its Debtor Affiliates* [D.I. 153], (ii) *Limited Objection*

*and Reservation of Rights of Vidul Prakash with Respect to Cure Amount and Chapter 11 Plan* [D.I. 150], (iii) *Objection of DeSoto County Board of Supervisors and City of Olive Branch to Confirmation of Joint Prepackaged Chapter 11 Plan of Reorganization of View, Inc., and its Debtor Affiliates* [D.I. 149], and (iv) *Securities Litigation Plaintiffs' Objection to (I) Confirmation of the Debtors' Proposed Prepackaged Plan of Reorganization, and (II) Final Approval of the Debtors' (A) Disclosure Statement, and (B) Solicitation Procedures* [D.I. 159] (the "Objections"). The Debtors also received informal comments to the Prepackaged Plan from several parties, including the Office of the United States Trustee, counsel to certain surety bond providers, counsel to Chubb, counsel to Atlantic Specialty Insurance Company and Liberty Mutual, counsel to the landlord for the Debtors' previous headquarters, counsel to certain shareholder plaintiffs, and the United States Attorneys' Office.

16.     The Debtors made certain revisions to the Prepackaged Plan to address the formal and informal concerns raised by the objecting parties, as set forth on **Exhibit A** hereto.  To the extent that such concerns are not resolved pursuant to the responses set forth on **Exhibit A**, the Debtors intend to work with the remaining objectors on proposed language for the Prepackaged Plan and/or the Confirmation Order in advance of the Confirmation Hearing.  To the extent the Debtors have not resolved the Objections prior to the Confirmation Hearing, the Debtors reserve the right to respond prior to or at the Confirmation Hearing.

## ARGUMENT

17.     This section of the Memorandum is divided into three parts.  Part I addresses the Disclosure Statement and the Solicitation Procedures and their satisfaction of the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

Part II addresses the requirements for confirmation of the Prepackaged Plan under section 1129 of the Bankruptcy Code and demonstrates the satisfaction of each requirement and achievement of the objectives of chapter 11. Part III provides a summary of the Debtors' replies to the Objections and addresses the Debtors' request for a waiver of the 14-day stay imposed by Bankruptcy Rules 3020(e), 6004(h), 6006(d), and/or 7062, as applicable.

**I.     THE DISCLOSURE STATEMENT SHOULD BE APPROVED AS CONTAINING "ADEQUATE INFORMATION" IN SATISFACTION OF SECTION 1125 OF THE BANKRUPTCY CODE AND MEETING THE REQUIREMENTS OF BANKRUPTCY RULE 3016(C)**

**A.     Parties in Interest Received Sufficient Notice of the Confirmation Hearing and Objection Deadline**

18.     Under Bankruptcy Rule 3017(a), a hearing on the adequacy of a disclosure statement requires 28 days' notice. *See* Fed. R. Bankr. P. 3017(a). Bankruptcy Rule 2002(b) further provides that parties in interest should receive 28 days' notice of the objection deadline for, and hearing to consider approval of, the disclosure statement and confirmation of a chapter 11 plan. *See* Fed. R. Bankr. P. 2002(b). Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of the plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi).

19.     On April 2, 2024, thirty-four (34) days before the Objection Deadline, the Debtors caused Kroll to commence service of the Solicitation Package on the Voting Classes. Moreover, as noted, the Debtors served the Combined Hearing Notice to all known creditors and equity holders on April 8, 2024, and published a summary version of the Combined Hearing Notice on April 8, 2024 in accordance with the Procedures Order. The Objection Deadline of May 6, 2024, was thirty-four (34) days following the commencement of solicitation and approximately twenty-eight (28) days following service of the Combined Hearing Notice, which is in compliance with

the time periods required by the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All parties in interest had sufficient notice of the Objection Deadline and the Confirmation Hearing, and no party has been prejudiced by this schedule.

**B.    The Disclosure Statement Satisfies Requirements of Bankruptcy Code**

20.    As further described above, the Debtors' solicitation complies with section 1126(b)(2) of the Bankruptcy Code, which requires that the Debtors demonstrate compliance with section 1125(a) of the Bankruptcy Code.  In addition, the Debtors must demonstrate compliance with section 1125(b) with respect to the postpetition solicitation.  Section 1125(b) provides that an approved disclosure statement must be transmitted to Holders of Claims or Interests whose votes are being solicited after the commencement of the Chapter 11 Cases.

21.    To approve a prepetition solicitation of votes to accept or reject a plan, the Court must determine whether such solicitation complied with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rules 3017(d), 3017(e), 3018(b), and 3018(c).  Section 1125(g) of the Bankruptcy Code provides that "[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law."  11 U.S.C. § 1125(g).  Section 1126(b) of the Bankruptcy Code, in turn, provides that "[A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as

10

defined in section 1125(a) of this title."  11 U.S.C. § 1126(b).  Prepetition solicitations must,

therefore, either comply with applicable federal or state securities laws and regulations (including

the registration and disclosure requirements thereof) or, if such laws and regulations do not apply,

the solicited Holders must receive "adequate information" as defined in section 1125(a) of the

Bankruptcy Code.  As discussed below, the Debtors satisfied sections 1125(g) and 1126(b), as

applicable, of the Bankruptcy Code.

      C.      **The Disclosure Statement Contains Adequate Information and Should be Approved**

22.      The primary purpose of a disclosure statement is to provide "adequate information"

that allows parties entitled to vote on a proposed plan to make an informed decision about whether

to vote to accept or reject the plan.  *See, e.g.*, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v.

Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) ("Under 11 U.S.C. § 1125(b), a party seeking

chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure

statement containing 'adequate information' to 'enable a creditor to make an informed judgment

about the Plan.'" (quoting 11 U.S.C. § 1125(a)(1))).  "Adequate information" is a flexible standard,

based on the facts and circumstances of each case.  *See Oneida Motor Freight, Inc. v. United Jersey

Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that

adequate information will be determined by the facts and circumstances of each case." (citations

omitted)).

23.      The Disclosure Statement is extensive and comprehensive, containing more than

adequate information.  It contains descriptions and summaries of, among other things: (a) the

classification and treatment of Claims and Interests under the Prepackaged Plan, including who is

entitled to vote and how to vote on the Prepackaged Plan; (b) the Debtors' corporate history,

structure, and business overview; (c) events leading to, and occurring during, these Chapter 11

Cases; (d) certain important effects of confirmation of the Prepackaged Plan; (e) the releases, exculpations, and injunctions contemplated by the Prepackaged Plan; (f) a description of the procedures for soliciting votes to accept or reject the Prepackaged Plan; and (g) certain financial information about the Debtors, including a liquidation analysis and financial projections.

24.     In addition, and as noted above, the Disclosure Statement and the Prepackaged Plan were subject to review and comment by the parties to the Restructuring Support Agreement, including the Consenting Creditors.

25.     Further, the Disclosure Statement provides sufficient notice and information regarding the Debtor Release, Third-Party Release, injunction, and exculpation provisions of the Prepackaged Plan.  Bankruptcy Rule 2016(c) requires that if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts enjoined and the entities subject to an injunction under the Prepackaged Plan and the acts that they are enjoined from pursuing, and such language is in bold font, making it conspicuous to any reader.

26.     Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and includes sufficiently specific and conspicuous language within the meaning of section 1125(a) of the Bankruptcy Code and Bankruptcy Rule 2016(c) and should be approved.

**D.      The Prepetition Solicitation of Votes Complied with the Bankruptcy Code, Bankruptcy Rules, Applicable Nonbankruptcy Laws, and the Procedures Order**

27.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

> Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired

classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,

> (1) the plan or a court-approved summary of the plan;
> (2) the disclosure statement approved by the court;
> (3) notice of the time within which acceptances and rejections of the plan may be filed; and
> (4) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

FED R. BANKR. P. 3017(d). Bankruptcy Rule 3017(d) also provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

*Id.*

28.     As set forth herein and as approved in the Procedures Order, the Solicitation Package and Solicitation Procedures comply with the Bankruptcy Code and Bankruptcy Rules.

### 1.     The Ballots Used to Solicit Holders of Claims and Interests Entitled to Vote on the Prepackaged Plan Complied with Bankruptcy Rules

29.     Bankruptcy Rule 3017(d) requires debtors to distribute a ballot that conforms substantially to Official Form No. 314 only to "creditors and equity security holders entitled to vote on the plan." FED. R. BANKR. P. 3017(d). Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed

by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." FED. R. BANKR. P. 3018(c). Only Holders of Claims in the Voting Classes were sent Ballots. The Ballots conformed to Official Form No. 314 and were modified to address the facts of these cases and appropriately tailored for each Voting Class. The Ballots were approved by the Court in the Procedures Order. Accordingly, the Debtors have satisfied Bankruptcy Rules 3017(d) and 3018(c).

### 2.    The Voting Record Date Complied with Bankruptcy Rules

30.    Pursuant to Bankruptcy Rule 3018(b), "[a]n equity security holder or creditor whose claim is based on a security of record . . . shall not be deemed to have accepted or rejected the plan . . . unless the equity security holder or creditor was the holder of record of the security on the date specified in the solicitation of such acceptance or rejection for the purposes of such solicitation." FED. R. BANKR. P. 3018(b). The Disclosure Statement and the Solicitation Packages identified April 1, 2024 as the Voting Record Date for determining which Holders of Claims the Voting Classes were entitled to vote on the Prepackaged Plan. Accordingly, the Debtors have satisfied Bankruptcy Rule 3018(b).

### 3.    The Debtors' Vote Tabulation was Appropriate

31.    As set forth in the Voting Certification, Kroll used standard tabulation procedures in tabulating the votes received from the Voting Parties. The Voting Agent carefully reviewed all Ballots received by the Voting Deadline in accordance with the procedures described in the Disclosure Statement and in the instructions in the Ballots. The Court should approve the Debtors' tabulation of votes confirming that, with respect to the Voting Classes, the requisite majorities in amount and number of voting Claims voted to accept the Prepackaged Plan pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code.

4.    **Solicitation Complied with the Bankruptcy Code and Was in Good Faith**

32.    Pursuant to section 1125(e) of the Bankruptcy Code, "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan. 11 U.S.C. § 1125(e).

33.    The Debtors and the parties to the Restructuring Support Agreement (including the Related Parties thereof) at all times engaged in arm's length, good-faith negotiations, and all parties—including the Exculpated Parties and Section 1125(e) Exculpation Parties—took appropriate actions in connection with solicitation of the Prepackaged Plan and in the offer and issuance of any securities under the Prepackaged Plan in compliance with section 1125 of the Bankruptcy Code. Therefore, the Court should grant these parties the protections provided under section 1125(e) of the Bankruptcy Code.

5.    **Prepetition Solicitation Complied with Applicable Nonbankruptcy Law**

34.    Pursuant to sections 1126(b)(1) and 1125(g) of the Bankruptcy Code, the prepetition Solicitation of the eligible Holders complied with general applicable federal and state securities laws and regulations. Specifically, the Debtors' prepetition solicitation was exempt from registration under the Securities Act, under one or more of the exemptions from registration provided thereunder, including Section 4(a)(2) of the Securities Act and Regulation S thereunder. Section 4(a)(2) of the Securities Act is an exemption from the registration requirements under Section 5 of the Securities Act for transactions by an issuer not involving a "public offering." 15 U.S.C. § 77d(a)(2). Regulation S provides safe harbor exemptions from the registration requirements of Section 5 of the Securities Act for certain offers and sales of securities to persons

outside the United States that are "offshore transactions" that do not include "directed selling efforts" and meet certain other criteria specified in Regulation S under the Securities Act.  Only "accredited investors," as that term is defined in Rule 501 of Regulation D and, outside the United States, non-U.S. persons (who are not purchasing for the account or benefit of a U.S. person) within the meaning of Regulation S under the Securities Act were entitled to vote on the Prepackaged Plan prepetition.  Moreover, there was no general solicitation and there were no directed selling efforts in connection with an offer or sale of securities under the Prepackaged Plan.

35.     As such, (i) the prepetition solicitation of accredited investors in the United States did not constitute a "public offering" and thus falls within the exemption set out in Section 4(a)(2) of the Securities Act and (ii) the prepetition solicitation outside the United States met the criteria of Regulation S under the Securities Act, and such solicitation complies with the requirements of sections 1126(b)(1) and 1125(g) of the Bankruptcy Code.

## II.    THE PREPACKAGED PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE

36.     Section 1129 of the Bankruptcy Code governs confirmation of a chapter 11 plan and sets forth the requirements that must be satisfied in order for a plan to be confirmed.  The Debtors bear the burden of establishing that all elements necessary for confirmation of the Prepackaged Plan under section 1129(a) have been met by a preponderance of the evidence.[4]  This Memorandum and the King Declaration filed concurrently herewith demonstrate that, by a preponderance of the evidence, the Prepackaged Plan complies with the requirements of section

---

[4] *See In re Tribune Co.*, 464 B.R. 126, 151-52 (Bankr. D. Del. 2011) (explaining that the plan proponent bears the burden of establishing the plan's compliance with section 1129(a) of the Bankruptcy Code (citing *In re Exide Tech.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003))), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011).

1129(a) of the Bankruptcy Code with respect to all Classes of Claims and Interests.  Accordingly, for the reasons set forth herein, the Prepackaged Plan should be confirmed.

### A. The Prepackaged Plan Complies with All Applicable Provisions of the Bankruptcy Code – 11 U.S.C. § 1129(a)(1)

*37.*    Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a chapter 11 plan only if such plan complies with applicable provisions of the Bankruptcy Code.[5]  A principal objective of section 1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan. Accordingly, the determination of whether the Prepackaged Plan complies with section 1129(a)(1) requires an analysis of the compliance with sections 1122 and 1123 of the Bankruptcy Code.  As set forth below, the Prepackaged Plan complies with these sections of the Bankruptcy Code.

### 1. The Classification of Claims and Interests in the Prepackaged Plan Satisfies the Requirements of Section 1122 of the Bankruptcy Code

38.    Section 1122(a) of the Bankruptcy Code provides that the claims or interests within a given class must be "substantially similar."[6]  Section 1122(a), however, does not mandate that "substantially similar" claims be classified together.[7]

---

[5] *See* 11 U.S.C. § 1129(a)(1).  The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123, which govern the classification of claims under the plan and the contents of the plan, respectively.  *See* H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[6] *See* 11 U.S.C. § 1122(a).

[7] *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (agreeing that section 1122 permits the grouping of similar claims in different classes); *In re Coram Healthcare Corp.*, 315 B.R. 321, 348 (Bankr. D. Del. 2004) (noting that "section 1122 . . . provides that claims that are not 'substantially similar' may not be placed in the same class; it does not expressly prohibit placing 'substantially similar' claims in separate classes").

39.     Courts have generally permitted the separate classification of substantially similar claims so long as the claims were not classified to "gerrymander" an accepting impaired class.[8] While gerrymandering claims to create an impaired accepting class is not permissible, section 1122 provides plan proponents with a great degree of flexibility in classifying claims and interests. Likewise, courts have broad discretion in approving a proponent's classification scheme after considering the specific facts of each case.[9]

40.     Article III.A of the Prepackaged Plan classifies nine (9) Classes of Claims against and Interests in the Debtors, as described more fully in the Disclosure Statement and the Prepackaged Plan.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims against and Interests in the Debtors contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Moreover, the Prepackaged Plan's classification of Claims and Interests into nine (9) Classes satisfies the requirements of section 1122 of the Bankruptcy Code because the Claims and Interests in each Class differ from the Claims and Interests in each other Class in a legal or factual nature.  In addition, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims against and Interests in the Debtors under the Prepackaged Plan.  Based upon the foregoing, the Prepackaged Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

---

[8] *See Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991) ("[T]hou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."); *see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154, 158 (3d Cir. 1993).

[9] *See In re Jersey City Med. Ctr.*, 817 F.2d at 1060-61 ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case.").

## 2.   The Prepackaged Plan Satisfies the Requirements of Section 1123(a) of the Bankruptcy Code

41.     The Prepackaged Plan also complies with section 1123(a) of the Bankruptcy Code, which sets forth seven (7) requirements for every chapter 11 plan.[10]  As demonstrated below, the Prepackaged Plan complies with each such requirement:

1.      Section 1123(a)(1). In accordance with section 1123(a)(1) of the Bankruptcy Code, Article III.A of the Prepackaged Plan properly designates all Claims and Interests that require classification, as required by section 1123(a)(1) of the Bankruptcy Code.

2.      Sections 1123(a)(2)–(3). In accordance with sections 1123(a)(2) and (3) of the Bankruptcy Code, Article III of the Prepackaged Plan specifies whether each Class of Claims or Interests is Unimpaired or Impaired under the Prepackaged Plan and the treatment of each Impaired Class, as required by sections 1123(a)(2)–(3) of the Bankruptcy Code.

3.      Section 1123(a)(4). In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the Prepackaged Plan provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

4.      Section 1123(a)(5). In accordance with section 1123(a)(5) of the Bankruptcy Code, Article IV of the Prepackaged Plan provides adequate means for the Prepackaged Plan's implementation.

5.      Section 1123(a)(6). In accordance with section 1123(a)(6) of the Bankruptcy Code, Articles IV.H and L of the Prepackaged Plan provides for, among other things, New Common Interests to be Issued to the Class 4 Prepetition Loan Claims and Class 5 Prepetition Convertible Note Claims, and New Corporate Governance Documents to be adopted on the Effective Date and includes a prohibition against issuing non-voting equity securities and related protections for preferred shareholders

6.      Section 1123(a)(7). Article VI.B of the Prepackaged Plan authorizes the Debtors, Reorganized Debtors, or such other Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions pursuant to the Prepackaged Plan.  As of the Effective Date, the terms of the current members of the board of directors of the Debtors shall expire and the existing officers of the Debtors shall be automatically removed as officers.  Article IV.L

---

[10] See 11 U.S.C. § 1123(a).

of the Prepackaged Plan provides that New Boards and new officers of each of the Reorganized Debtors shall be appointed.

### 3. The Prepackaged Plan Complies with the Requirements of Section 1123(b) of the Bankruptcy Code

#### a. The Prepackaged Plan's Discretionary Provisions are Consistent with Section 1123(b) of the Bankruptcy Code

42.    Section 1123(b) of the Bankruptcy Code contains various discretionary provisions that may be included in a chapter 11 plan.[11]  For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases.  A plan also may include the settlement or adjustment of any claim or interest held by the debtor or the debtor's estate or provide for the debtor's retention and enforcement of any such claim or interest.[12]  Likewise, a plan may modify the rights of secured creditors or unsecured creditors, or leave unaffected the rights of creditors in any class of claims.[13]  Finally, a plan may contain "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[14]

43.    In accordance with section 1123(b) of the Bankruptcy Code, the Prepackaged Plan employs various discretionary provisions, including the following:

1.    Article III provides that certain Classes are Unimpaired and others are Impaired;

2.    Articles IV establishes procedures for the distributions on account of Claims allowed as of the Effective Date;

3.    Article V provides that, except as provided for in Article V.H of the Prepackaged Plan, all Executory Contracts or Unexpired Leases not otherwise

---

[11] *See* 11 U.S.C. § 1123(b).

[12] *See id.* § 1123(b)(3)(A), (B); *see, e.g., In re Exide Tech.,* 303 B.R. at 67 (noting that section 1123(b)(3)(A) permits settlements to be incorporated into a plan of reorganization); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.),* 279 B.R. 145, 158–59 (Bankr. D. Del. 2002) (noting that section 1123(b)(3)(B) permits a plan to retain causes of action by the debtor or representatives).

[13] 11 U.S.C. § 1123(b)(5).

[14] *See id.* § 1123(b)(6).

assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with sections 365 and 1123 of the Bankruptcy Code;

4.  Article XI provides that the Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Disclosure Statement and the Prepackaged Plan, except as otherwise specifically stated therein;[15] and

5.  As discussed further below, Article VIII provides for: (a) the Debtors Releases (the "<u>Debtor Release</u>"); (b) the Releases by the Releasing Parties (the "<u>Third-Party Release</u>"); (c) an exculpation (the "<u>Exculpation</u>"); and (d) certain injunction provisions prohibiting parties from pursuing Claims or Causes of Action released under the Disclosure Statement or the Prepackaged Plan (the "<u>Injunction</u>").

44.    The Debtors submit that the discretionary provisions contained in the Prepackaged Plan are reasonable and appropriate in light of the circumstances of the Chapter 11 Cases and permissible under section 1123(b) of the Bankruptcy Code.

> b.    <u>The Debtor Release, Third-Party Release, Exculpation, and Injunction Provisions Should Be Approved</u>

45.    The principal terms of the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction, as well as the basis for approval of these Prepackaged Plan provisions, are described below.  The Debtors submit that, based upon the circumstances and record of the Chapter 11 Cases and the paramount interest of creditors and other parties in interest, the Debtor Release, Third-Party Release, Exculpation, and Injunction provisions of the Prepackaged Plan should be approved.  The Debtor Release, Third-Party Release, Exculpation, and Injunction provisions of the Prepackaged Plan are not inconsistent with the Bankruptcy Code and, as a result, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

---

[15] *See Gruen Mktg. Corp. v. Asia Commercial Co., Ltd.* (*In re Jewelcor Inc.*)*,* 150 B.R. 580, 582 (Bankr. M.D. Pa. 1992) ("There is no doubt that the bankruptcy court's jurisdiction continues post confirmation to 'protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.'" (citations omitted)).

<em>(i)        Debtor Release (Article VIII.C of the Prepackaged Plan)</em>

46.    Pursuant to the Prepackaged Plan and subject to the terms of the Confirmation Order, the Debtors (on their own behalf and as a representative of their respective Estates) release certain entities that commonly are released in chapter 11 plans from all Claims and Causes of Action that have arisen prior to the Effective Date.  Specifically, Article VIII.C of the Prepackaged Plan provides:

> As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Prepackaged Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement or as otherwise provided in any order of the Bankruptcy Court, to the maximum extent permitted by law, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, on and after the Effective Date, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and the Debtors' Estates, and each of their Related Parties, in each case on behalf of themselves and their respective successors, permitted assigns, and representatives and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons or Entities, from any and all claims, interests (including Interests), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, liens, losses, remedies, contributions, indemnities, costs, or liabilities whatsoever, including any derivative claims or Causes of Action, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' Estates and each of their Related Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal, state, provincial, foreign, or territorial securities laws or otherwise that the Debtors, the Reorganized Debtors, or the Debtors' Estates and each of their Related Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of a Claim or Interest or other Person or Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Debtors' Estates, the Chapter 11 Cases,

22

the purchase, sale, issuance, cancellation, or rescission of the purchase of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Debtors' Chapter 11 Cases, the Restructuring, the DIP Documents, the New Exit Facility, the negotiation, formulation, preparation or consummation of the Prepackaged Plan (including the Plan Supplement), the Definitive Documents, the Restructuring Support Agreement, and any exhibits or documents related thereto, the Solicitation Materials, or the solicitation of votes with respect to the Prepackaged Plan, in all cases based on any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes actual fraud, gross negligence, or willful misconduct as determined by a Final Order shall not be released; *provided, further*, that the releases under this section VIII.C do not release any direct claims of Related Parties against the Released Parties and provided, further, that (i) Vidul Prakash and (ii) Saurabh Agarwal shall not be a "Released Party."

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Prepackaged Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Prepackaged Plan; (2) a good faith settlement and compromise of the claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

47.    Specifically, the Released Parties are:

[C]ollectively, and in each case in its capacity as such:  (a) each Debtor;  (b) each Reorganized Debtor;  (c) the Agents/Trustees; (d) the Consenting Creditors;  (e) the DIP Lenders;  (f) the DIP Agent;  (g) each current and former Affiliate of each Entity in the foregoing clause (a) through (f); and (h) each Related Party of each

Entity in clause (a) through (g); *provided* that any Holder of a Claim or Interest that affirmatively opts out of the releases provided by the Prepackaged Plan by checking the box on the applicable ballot or Notice of Non-Voting Status indicating that they opt not to grant the releases provided in the Prepackaged Plan shall not be a "Released Party"; and *provided*, *further*, that (i) Vidul Prakash and (ii) Saurabh Agarwal shall not be a "Released Party."[16]

48.    Section 1123(b)(3)(A) of the Bankruptcy Code states that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[17] The Bankruptcy Code thus clearly contemplates that the Debtors are permitted to settle or release any claim or cause of action that they might otherwise have against a third party. When considering releases by a debtor of non-debtor third parties pursuant to section 1123(b)(3)(A), the appropriate standard is whether "the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[18] As an exercise of its business judgment, a debtor's decision to release claims against third parties under a plan is afforded deference.[19]

---

[16] Plan Art. I.A.111. "Related Parties" is defined as:

> [C]ollectively, current and former directors, managers, officers, equity holder (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, heirs, executors, and assigns, and other professionals, in each case solely in their capacities as such; *provided* that, notwithstanding the foregoing, neither Vidul Prakash and Saurabh Agarwal shall not be considered a Related Party or a Released Party.

[17] 11 U.S.C. § 1123(b)(3)(A).

[18] *U.S. Bank. Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010).

[19] *See, e.g., id.* at 140 ("It is not appropriate to substitute the judgment of the objecting creditors over the business judgment of the Debtors . . . ."); *Heroes World Dist., Inc. v. MAFCO Holdings, Inc. (In re Marvel Entm't Grp., Inc.)*, 273 B.R. 58, 78 (D. Del. 2002) ("[U]nder the business judgment rule...a court will not interfere with the judgment of a board of directors unless there is a showing of gross and palpable overreaching. Thus, under the business judgment rule, a board's decisions will not be disturbed if they can be attributed to any rational purpose and a court will not substitute its own notions of what is or is not sound business judgment." (internal quotation marks and citations omitted)).

49.     Additionally, some courts in this district have identified the following list of non-exhaustive factors in determining the propriety of a debtor release, commonly known as the *Zenith* or *Master Mortgage* factors (the "*Zenith* Factors"):[20]

1)   an identity of interest between the debtor and the non-debtor such that a suit against the non-debtor will deplete the estate's resources;

2)   a substantial contribution to the plan by the non-debtor;

3)   the necessity of the release to the reorganization;

4)   the overwhelming acceptance of the plan and release by creditors and interest holders; and

5)   the payment of all or substantially all of the claims of the creditors and interest holders under the plan.[21]

50.     As a list of nonconjunctive factors, these factors provide a way of "weighing the equities of the particular case after a fact-specific review."[22]  Importantly, not each factor is relevant in every case and consensual releases may be approved where only a few factors are present.  Here, the Debtor Release meet the *Zenith* Factors and should be approved.

51.     *First*, the Debtor Release is essential to the Prepackaged Plan because prosecution of any claims or causes of action that may exist would generally be complex and time-consuming and could mire the Debtors and the parties in interest in wholly speculative and potentially value-

---

[20] The *Zenith* Factors were first articulated as the standard for approving a third party release (*i.e.*, a provision releasing a non-debtor's claim against another non-debtor).  *See In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994).  Later, in *Zenith*, this Court applied the *Master Mortgage* factors to a debtor release.  *See In re Zenith Elec. Corp.*, 241 B.R. 92, 110-11 (Bankr. D. Del. 1999) (citing *Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930).  As such, the Debtors have applied the *Zenith* Factors to the Debtor Release and, for the reasons set forth herein, submit that the Debtor Release in this case satisfies the *Zenith* Factors and should be approved.

[21] *In re Washington Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) (citing *In re Zenith Elecs. Corp.*, 241 B.R. at 110 and *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. at 937); *see also In re Indianapolis Downs, LLC*, 486 B.R. 286, 303-04 (Bankr. D. Del. 2013) ("These factors are neither exclusive nor are they a list of conjunctive requirements."); *In re Exide Techs.*, 303 B.R. at 72 (finding that *Zenith* factors are not exclusive or conjunctive requirements).

[22] *Indianapolis Downs*, 486 B.R. at 303.

destructive litigation and would distract the Released Parties from their work with the Reorganized Debtors.

52.    In addition, as described in the First Day Declaration, on February 21, 2024, the Board of Directors of View, Inc. (the "Board") appointed Patrick J. Bartels, Jr. as a disinterested director of the Board (the "Disinterested Director").  The Disinterested Director was delegated sole authority (i) on all matters in which a conflict of interests exists or is reasonably likely to exist between View, Inc. on the one hand, and any related party, on the other hand (each, a "Conflict Matter"), and (ii) to make a determination as to whether any matter constitutes a Conflict Matter. In addition, the Board delegated sole authority to the Disinterested Director to conduct an independent review with respect to potential causes of action of the Debtors, if any, against any related party, including the appropriateness or necessity of any releases in the Prepackaged Plan, including the Debtor Release.  The Disinterested Director's independent investigation began prior to the Petition Date and was completed in May 2024.  Ultimately, the Disinterested Director, in consultation with his advisors, concluded that the Debtor Release is appropriate and should be approved under the terms of the Prepackaged Plan, and that the Debtor Release is reasonable, fair, and equitable, and is in the best interest of the Debtors' Estates.

53.    *Second*, the Debtors have the support of the parties in interest for the Debtor Release. Notably, as evidenced by the Voting Certification, Holders of the Voting Classes have unanimously voted to accept the Prepackaged Plan.  This degree of consensus evidences the support of the parties in interest for the Debtor Release embodied in the Prepackaged Plan.

54.    *Third,* the Released Parties have all contributed significant efforts to the Debtors' businesses and provided substantial assistance to the Debtors throughout this process, as evidenced by the King Declaration.  Specifically, each of the parties to be released by the Debtors are critical

participants in the Chapter 11 Cases and the Debtor Release is an integral part of the Prepackaged Plan and a condition of the transaction set forth therein. The Debtor Release facilitated participation in both the Prepackaged Plan and the chapter 11 process and each of the parties to be released by the Debtors were critical in reaching consensus to support the Prepackaged Plan. Indeed, the Debtors' key stakeholders insisted on the inclusion of the Debtor Release as a condition to entering into the Restructuring Support Agreement and, ultimately, supporting the Prepackaged Plan. The Debtor Release was thus a core negotiation point and appropriately offers certain protections to parties that constructively participated in the Chapter 11 Cases.

55.     Given that the causes of action being released pursuant to the Debtor Release belong to the Debtors, it is plainly within their purview to release. Notably, the Debtors have exercised their business judgment to release those causes of action under the Debtor Release. In sum, the Debtor Release is not only fair, equitable, and necessary to the Debtors' orderly reorganization, but also is appropriate under prevailing Third Circuit case law. The Debtor Release also provides finality and avoids significant delay, and therefore inures to the benefit of all of the Debtors' creditors and all of the parties in interest in the Chapter 11 Cases.

56.     For all of the foregoing reasons, the Debtor Release is an integral component of the Prepackaged Plan, complies with the Bankruptcy Code, is fair, reasonable, and in the best interests of the Debtors, their estates, and their creditors, and should be approved.

*(ii)      The Third-Party Release (Article VIII.D)*

57.     Pursuant to the Prepackaged Plan and subject to the terms of the Confirmation Order, the Releasing Parties release any and all claims, interests (including Interests), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, liens, losses, remedies, contributions, indemnities, costs or liabilities, including any derivative claims or Causes of

27

Actions, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors'

Estates against the Released Parties. Specifically, Article VIII.D of the Prepackaged Plan

provides:

> As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Prepackaged Plan and the obligations contemplated by the Definitive Documents and the documents in the plan supplement or as otherwise provided in any order of the Bankruptcy Court, to the maximum extent permitted by law, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, on and after the Effective Date, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties from any and all claims, interests (including Interests), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, liens, losses, remedies, contributions, indemnities, costs, or liabilities whatsoever, including any derivative claims or Causes of Action, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal, state, provincial, foreign, or territorial securities laws or otherwise that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of a Claim or Interest or other Person or Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Debtors' Estates, the Chapter 11 Cases, the purchase, sale, issuance, cancellation, or rescission of the purchase of any security of the of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Debtors' Chapter 11 Cases, the Restructuring, the DIP Documents, the New Exit Facility, the negotiation, formulation, preparation or consummation of the Prepackaged Plan (including the plan supplement), the Definitive Documents, the Restructuring Support Agreement, and any exhibits or documents related thereto, the Solicitation Materials, or the solicitation of votes with respect to the Prepackaged Plan, in all cases based on any act or omission,

transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes actual fraud, gross negligence, or willful misconduct as determined by a Final Order shall not be released; *provided, further*, that (i) Vidul Prakash and (ii) Saurabh Agarwal shall not be a "Released Party."

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of these releases, which includes by reference each of the related provisions and definitions contained in this Prepackaged Plan, and, further, shall constitute the Bankruptcy Court's finding that these releases are:  (1) essential to the confirmation of the Prepackaged Plan; (2) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Prepackaged Plan; (3) a good faith settlement and compromise of the claims and Causes of Action released by these releases; (4) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to these releases.

58.    The Prepackaged Plan defines Releasing Parties as follows:

[C]ollectively, and in each case in its capacity as such:  (a) the Agents/Trustees; (b) the Consenting Creditors; (c) the DIP Lenders; (d) the DIP Agent; (e) the Delaware Class Action Plaintiffs; (f) all Holders of Claims that vote to accept the Prepackaged Plan; (g) all Holders of Claims or Interests that are presumed to accept the Prepackaged Plan who do not affirmatively opt out of the releases provided by Article VIII.D of the Prepackaged Plan by checking the box on the applicable Notice of Non-Voting Status indicating that they opt not to grant the releases provided by Article VIII.D of the Prepackaged Plan; (h) all Holders of Claims or Interests that abstain from voting on the Prepackaged Plan and who do not affirmatively opt out of the releases provided by Article VIII.D of the Prepackaged Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Prepackaged Plan; (i) all other Holders of Claims or Interests that vote to reject the Prepackaged Plan or are deemed to reject the Prepackaged Plan and who do not affirmatively opt out of the releases provided by Article VIII.D of the Prepackaged Plan by checking the box on the applicable ballot or Notice of Non-Voting

Status, as applicable, indicating that they opt not to grant the releases provided by Article VIII.D of the Prepackaged Plan; (j) each current and former Affiliate of each Entity in the foregoing clause (a) through (i); and (k) each Related Party of each Entity in clause (a) through this clause (k), provided with respect to (k) hereof, a Related Party is only a Releasing Party with respect to claims that it could have properly asserted on behalf of the Entities identified in (a) through (j) hereof.

59.    The Third-Party Release satisfies the standard for approval of such releases in this district and should be approved.  Here, the Non-Voting Classes have had sufficient opportunity to review the proposed Third-Party Release and the Opt-Out Form and the Notice of Combined Hearing.  Affirmative consent to a third-party release is not required for such release to be "consensual."[23]  A third-party release is consensual against non-debtor parties where the releasing parties have the opportunity to opt out of the release but fail to do so.[24]

60.    The Debtors have reached an agreement with the plaintiffs in *Siseles and Uvaydov v. Lutnick, et al.*, (Case No. 2023-1152-JTL, Del. Ch.) action.  Agreed language is included in the Confirmation Order whereby these plaintiffs have agreed to be Releasing Parties under the Prepackaged Plan, subject to the rights granted to them in the Confirmation Order.  Accordingly, the Third-Party Release is consensual as to these plaintiffs.  As reflected in the Prepackaged Plan,

---

[23]    *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013); *see also In re Arsenal Intermediate Holdings, LLC*, 2023 WL 2655592, at *1 (Bankr. D. Del. Mar. 27, 2023) ("This Court concludes that in the typical case, so long as the disclosure is prominent and conspicuous, and impaired creditors are given the ability to opt out simply by marking their ballot or by some other comparable device, it is appropriate to infer consent from a creditor's failure to opt out. Releases contained in a plan that permit creditors to opt out may be deemed consensual as to those who do not exercise that option.").

[24]    *See In re Indianapolis Downs*, 486 B.R. at 305, 306.

as amended, the remaining plaintiffs in other the shareholder lawsuits have been removed from the Third-Party Release provision.[25]

61.     Notably, the Opt-Out Form distributed to the Non-Voting Classes quoted the entirety of the Third-Party Release, clearly explaining to the Non-Voting Classes the necessary steps to opt-out of the Third-Party Release.  Thus, affected parties were on notice of Third-Party Release, including the option to opt out of the Third-Party Release.  As such, the Third-Party Releases are consensual releases of all Holders of Claims or Interests who did not return Opt-Out Forms or object to the Prepackaged Plan.

62.     The facts of the Chapter 11 Cases support the Third-Party Release.  The Third-Party Release is critical to the Prepackaged Plan and is fair and appropriate.  Without the efforts of the Released Parties, the Debtors would not have been able to consummate a value-maximizing reorganization for the benefit of all stakeholders through the Prepackaged Plan.  In addition, the Released Parties have been instrumental in supporting the Chapter 11 Cases and facilitating a smooth administration thereof.  Finally, throughout the Chapter 11 Cases and the negotiation of the Prepackaged Plan, the Debtors' directors and officers steadfastly maintained their duties to maximize value for the benefit of all stakeholders, investing countless hours both pre- and post-petition.

63.     Moreover, the third parties bound by the Third-Party Release have received sufficient consideration in exchange for the release of their Claims against the Released Parties to justify the Third-Party Release.  The Released Parties have made significant concessions and

---

[25]   This includes the plaintiffs in the following lawsuits: (a) *Mehedi v. View, Inc. f/k/a CF Finance Acquisition Corp. II etc.* (No. 5:21CV06374, N.D. Cal.), (b) *Jacobson v. Mulpuri, et al.* (No. 1:21CV01719, D. Del.); (c) *Damidi v. Mulpuri, et al.* (No. 1:22CV00675, D. Del.); (d) *Monteleone v. Mulpuri, et al.* (No. 1:22-cv-00980, D. Del.); and (e) *Roberts v. Mulpuri, et al.* (No. 5:23-cv-02248, N.D. Cal.).

commitments that will allow the Debtors to maximize the value of their estates and maintain their business as a going concern through the Debtors' restructuring. The Released Parties have been active and important participants in the development of the Prepackaged Plan and have expended significant time and resources analyzing and negotiating the issues presented by the Debtors' capital structure and the material barriers to the resolution thereof. In addition to significant concessions under the Prepackaged Plan, the Released Parties made the contributions as discussed above, each in exchange for, among other things, the Third-Party Release.

64.     The Debtors submit that the Third-Party Release is consensual. Accordingly, the Third-Party Release should be approved.

*(iii)     Exculpation (Article VII.E of the Prepackaged Plan)*

65.     The Exculpation is narrowly tailored to protect Estate fiduciaries for their actions taken in furtherance of the Chapter 11 Cases. Specifically, Article VIII.E of the Prepackaged Plan provides:

> Effective as of the Effective Date, to the fullest extent permissible under applicable Law and without affecting or limiting the releases set forth in Articles VIII.C and VIII.D herein, and except as otherwise specifically provided in the Prepackaged Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any Cause of Action or any claim arising from any act or omission from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Restructuring Support Agreement, the Disclosure Statement, the Prepackaged Plan (including the Plan Supplement), the DIP Facility, the DIP Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Prepackaged Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Prepackaged Plan, including the issuance of Securities pursuant to the Prepackaged Plan, or the distribution of property under the

Prepackaged Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Prepackaged Plan), except for claims or Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Prepackaged Plan. The Exculpated Parties have, and upon Consummation of the Prepackaged Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Prepackaged Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or such distributions made pursuant to the Prepackaged Plan. Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Prepackaged Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Prepackaged Plan.

The Exculpated Parties and other parties set forth above have, and upon confirmation of the Prepackaged Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Prepackaged Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or such distributions made pursuant to the Prepackaged Plan.

Solely with respect to the exculpation provision, notwithstanding anything to the contrary in the Plan or Plan Supplement, each of the Section 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer,

issuance, sale, or purchase of a security, offered or sold under the Plan.[26]

66.     The Prepackaged Plan specifies that the Exculpated Parties include:

> [C]ollectively, and in each case in its capacity as such, to the fullest extent permissible pursuant to applicable law, including section 1125(e) of the Bankruptcy Code: (a) the Debtors and the Debtors' current and former directors and officers; (b) any statutory committee appointed in the Chapter 11 Cases and the members thereof (solely in their capacities as such), (c) the Estate professionals, and, with respect to each of the foregoing Persons in clauses (a) and (b), solely to the extent they are or have been Estate fiduciaries; *provided* that notwithstanding the foregoing, neither Vidul Prakash nor Saurabh Agarwal shall be an Exculpated Party.[27]

67.     The Exculpated Parties have participated in the Chapter 11 Cases in good faith and the Exculpation is necessary to protect those Estate fiduciaries who have contributed to the Debtors' plan efforts from collateral attacks related to their good-faith acts or omissions.  Further, the scope of the Exculpation is targeted and has no effect on liability that is determined to have constituted fraud, gross negligence or willful misconduct.  Additionally, the Section 1125(e) Exculpated Parties not otherwise included as an Exculpated party have also participate in the Chapter 11 Cases in good faith and protecting these parties is necessary to protect the Debtors' reorganization efforts.  Accordingly, the Court should also approve the exculpation of the Section 1125(e) Exculpation Parties.  The Section 1125(e) Exculpation Parties have also participated in the Chapter 11 Cases in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

---

[26] *See* Plan Art. VIII.E.

[27] *See id.* Art. I.A.52.

*(iv)     Injunction (Article VIII.D of the Prepackaged Plan)*

68.     Article VIII.F of the Prepackaged Plan generally provides that all Entities holding Claims or Interests are permanently enjoined from commencing or continuing in any manner any action or proceeding relating to any Interest that has been released or exculpated pursuant to the Prepackaged Plan or from in any way attempting to enforce, collect, or recover anything (including assertions of any right of setoff, subrogation, or recoupment) on account of such Claims or Interests.[28]  The Injunction is necessary to preserve and enforce the Debtor Release, the Third-Party Release and the Exculpation and is tailored to achieve that purpose.

**4.     The Prepackaged Plan Complies with the Requirements of Section 1123(d) of the Bankruptcy Code**

69.     Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

70.     Article V of the Prepackaged Plan provides for the treatment of executory contracts and unexpired leases.   Specifically, the Prepackaged Plan provides that the Debtors' and counterparties' respective rights and obligations under each Executory Contract and Unexpired Lease shall be unaffected by virtue of these Chapter 11 Cases, and the amounts coming due under such Executory Contracts and Unexpired Leases assumed under the Prepackaged Plan will be paid in the ordinary course of business pursuant to the terms of the Prepackaged Plan, the Confirmation Order, and such Executory Contracts or Unexpired Leases.   Accordingly, the requirements of section 1123(d) of the Bankruptcy Code have been satisfied.

---

[28] *See id.* Art. VIII.F.

**B.    The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code – 11 U.S.C. § 1129(a)(2)**

71.    Section 1129(a)(2) of the Bankruptcy Code requires that the "proponent of the plan complies with the applicable provisions of this title."[29] The legislative history of section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code.[30]  Thus, in determining whether a plan proponent has complied with section 1129(a)(2), courts focus on whether the proponent has adhered to the disclosure and solicitation requirements of sections 1125 and 1126.[31]

72.    The Debtors have complied with all requirements set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Procedures Order governing notice, disclosure, and solicitation in connection with the Prepackaged Plan.   Additionally, the Debtors have complied with all requirements set forth in the Procedures Order.   Accordingly, the requirements of section 1129(a)(2) have been satisfied.

**C.    The Prepackaged Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law – 11 U.S.C. § 1129(a)(3)**

73.    Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[32]  "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the

---

[29] 11 U.S.C. § 1129(a)(2).

[30] *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure").

[31] *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

[32] *See* 11 U.S.C. § 1129(a)(3).

Bankruptcy Code.'"[33]  In determining whether a plan has been proposed in good faith, courts have recognized that they should avoid applying any hard and inflexible rules, but should instead evaluate each case on its own merits.[34]

74.     Here, the Debtors have proposed the Prepackaged Plan in good faith and not by any means forbidden by law.  The Prepackaged Plan is the culmination of significant arms'-length negotiations among the Debtors, the Required Consenting Creditors, the Exit Lenders, and other significant parties in interest, and reflects the results of these negotiations.  The Debtors submit that the Prepackaged Plan is fundamentally fair and has been proposed with the legitimate purpose of maximizing recoveries for all of the Debtors' creditor constituencies, and promptly and efficiently making distributions pursuant to the Prepackaged Plan.  Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

> **D.     The Prepackaged Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval – 11 U.S.C. § 1129(a)(4)**

75.     Section 1129(a)(4) of the Bankruptcy Code provides that a court shall confirm a plan only if "payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."[35]   Section

---

[33] *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) (citations omitted).

[34] *See, e.g.*, *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *In re Century Glove*, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) (stating good faith should be evaluated in light of the totality of the circumstances surrounding confirmation).

[35] 11 U.S.C. § 1129(a)(4).

1129(a)(4) has been construed to require that all payments of professional fees paid from estate assets be subject to review and approval by the court as to the reasonableness of such fees.[36]

76.     In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Disclosure Statement or the Prepackaged Plan and incidental to the Chapter 11 Cases, including Professional Claims, has been or will be made by the Debtors other than payments that have been authorized by order of the Court.  Further, Article II.C of the Prepackaged Plan provides that Professional Claims are subject to Court approval and the standards of the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Court.  Accordingly, the Prepackaged Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### E.     The Debtors Have Disclosed the Identity of Directors and Officers and the Nature of Compensation of Insiders – 11 U.S.C. § 1129(a)(5)

77.     Section 1129(a)(5) of the Bankruptcy Code requires the proponent of a plan to disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy."[37]  Additionally, section 1129(a)(5)(B) requires the proponent of a plan to disclose the "identity of any insider that will be

---

[36] *See, e.g., Lisanti v. Lubetkin* (*In re Lisanti Foods, Inc.*), 329 B.R. 491, 503 (D.N.J. 2005); *In re Resorts Int'l, Inc.*, 145 B.R. 412, 476 (Bankr. D.N.J. 1990).

[37] *See* 11 U.S.C. § 1129(a)(5)(A)(i)–(ii).

employed or retained by the reorganized debtor, and the nature of any compensation for such insider."[38]

78.     On April 25, 2024, the Debtors filed the *Notice of Filing of Plan Supplement to Joint Prepackaged Chapter 11 Plan of Reorganization of View, Inc. and its Debtor Affiliates* [D.I. 137] (the "Plan Supplement").  Attached as Exhibit E to the Plan Supplement was the *Identity of Members of the New Boards and Officers of the Reorganized Debtors*, which provided detail on the composition of the New Boards.  Accordingly, the terms of the current members of the board of directors of the Debtors shall expire as of the Effective Date.  As indicated in the Plan Supplement, the Debtors will supplement the identity and affiliation of any Person proposed to serve on the New Boards and those Persons that will serve as officers of the Reorganized Debtors will be disclosed prior to the Confirmation Hearing.  Based upon the foregoing, the Prepackaged Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.      The Prepackaged Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6)**

79.     Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the debtor in the operation of its business approve any rate change under the plan.[39]  The Prepackaged Plan does not provide for any rate changes subject to the jurisdiction of any governmental regulatory commission.  Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Prepackaged Plan.

---

[38] *See id.* § 1129(a)(5)(B).

[39] *See id.* § 1129(a)(6).

G.    **The Prepackaged Plan is in the Best Interests of Creditors – 11 U.S.C. § 1129(a)(7)**

80.    Under section 1129(a)(7) of the Bankruptcy Code, the Court may confirm the Prepackaged Plan only if each Holder of a Claim or Interest in an Impaired Class has accepted the Prepackaged Plan or:

> will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date.[40]

This requirement is commonly referred to as the "best interests test." "Under the test, every creditor to a Chapter 11 reorganization plan must receive at least the liquidation value of its claim under the plan as it would in a Chapter 7 proceeding against the debtor in order for the court to find the plan is in the creditors' best interest."[41]    Courts estimate "this liquidation value by 'conjur[ing] up a hypothetical [C]hapter 7 liquidation that would be conducted on the effective date of the plan.'"[42]    Accordingly, analysis under section 1129(a)(7) "is 'not an exact science.'"[43] The Court need "only make a well-reasoned estimate of the liquidation value that is supported by the evidence on the record."[44]

81.    As demonstrated in the Liquidation Analysis attached as Exhibit D to the Disclosure Statement (the "Liquidation Analysis"), Claims in the Voting Class would receive substantially less of a distribution in a chapter 7 liquidation.    Moreover, because Holders of Claims or Interests in Impaired Classes are receiving at least as much value as they would receive if the

---

[40] *See id.* § 1129(a)(7).

[41] *In re W.R. Grace & Co.*, 475 B.R. 34, 141 (D. Del. 2012).

[42] *Id.* (quoting *In re Affiliated Foods, Inc.*, 249 B.R. 770, 787 (Bankr. W.D. Mo. 2000) (alterations in original)).

[43] *Id.* at 142 (quoting *Affiliated Foods*, 249 B.R. at 788).

[44] *Id.*

Chapter 11 Cases were converted to cases under chapter 7, the Prepackaged Plan satisfies the "best interests" test.

82.    For the reasons set forth above, the Prepackaged Plan provides recovery greater than the recovery in a chapter 7 for Holders of Allowed Claims, and, therefore, the Prepackaged Plan complies with section 1129(a)(7) of the Bankruptcy Code.

### H.    Although the Requirements of Section 1129(a)(8) Are Unmet, the Prepackaged Plan Should be Confirmed Because the Requirements of Section 1129(b) Are Satisfied – 11 U.S.C. § 1129(a)(8)

83.    Under section 1129(a)(8) of the Bankruptcy Code, the Court may confirm the Prepackaged Plan only if each Class of Claims or Interests (a) has accepted the Prepackaged Plan or (b) is not Impaired under the Prepackaged Plan.[45]  However, a court may still confirm a plan under section 1129(b) notwithstanding the requirements of section 1129(a)(8) "as long as the plan meets the other requirements of section 1129(a), and 'does not discriminate unfairly, and is fair and equitable' as to any dissenting impaired class.'"[46]

84.    Here, Classes 4 and 5 are Impaired under the Prepackaged Plan and have voted to accept the Prepackaged Plan.  Classes 7 and 9 are Impaired or Unimpaired under the Prepackaged Plan and are presumed to accept or deemed to reject the Prepackaged Plan under section 1126(g) of the Bankruptcy Code or deemed to accept the Prepacked Plan under section 1126(f).  Furthermore, Class 8 (Existing Equity Interests) is Impaired under the Prepackaged Plan and deemed to reject the Prepackaged Plan.  For this reason, the Court may confirm the Prepackaged

---

[45] *See* 11 U.S.C. § 1129(a)(8).

[46] *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 512 (3d Cir. 2005) (quoting 11 U.S.C. § 1129(b)(1)); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 646 (2d Cir. 1988) ("A plan of reorganization must either be accepted by each impaired class of claims or interests or meet certain rigid requirements with respect to each non-accepting class." (internal citation omitted)).

Plan only if the requirements of section 1129(b)(1) are satisfied with respect to Class 8. The Debtors submit that such requirements are satisfied here.

        a.    <u>Section 1129(b)(1) – The Prepackaged Plan Does Not Discriminate Unfairly</u>

*85.*     The Prepackaged Plan does not discriminate unfairly with respect to the Existing Equity Interests in Class 8. Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[47] Generally, courts have held that a plan unfairly discriminates in violation of section 1129(b) only if similarly situated claims receive materially different treatment without a reasonable basis for the disparate treatment.[48] There is no unfair discrimination if, taking into account the particular facts and circumstances of the case, there is a reasonable basis for the disparate treatment.[49]

86.     The Prepackaged Plan's treatment of Class 8 is proper because all similarly situated Holders of Claims and Interests will receive the same treatment, and the Prepackaged Plan's classification scheme rests on a legally acceptable rationale. Class 4 are Prepetition Term Loan Claims, Class 5 are Prepetition Convertible Note Claims, and Class 8 are Existing Equity Interests, none of which are similarly situated – legally or otherwise – to any other Class. Accordingly, the

---

[47] *See In re Tribune Co.*, 2020 WL 5035797, at *9 (3d Cir. Aug. 26, 2020) (adopting a flexible unfair discrimination standard); *In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established").

[48] *See In re Exide Techs.*, 303 B.R. at 78 ("The hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination.").

[49] *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) ("[R]ecogniz[ing] the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination.").

Prepackaged Plan does not discriminate unfairly with respect to Impaired Claims and Interests and therefore satisfies the requirements of section 1129(b) of the Bankruptcy Code.

b.    Section 1129(b)(2) – The Prepackaged Plan is Fair and Equitable

87.    Section 1129(b)(2) of the Bankruptcy Code sets forth the conditions under which a plan is "fair and equitable" with respect to a class of claims or interests.[50]  The cram down requirements under section 1129(b)(2) depend on whether the class is comprised of secured claims, unsecured claims or equity interests.

88.    The Prepackaged Plan is "fair and equitable" with respect to Class 8 because the Prepackaged Plan complies with the "absolute priority" rule.  Section 1129(b)(2)(C) of the Bankruptcy Code provides, among other things, that a plan is fair and equitable with respect to a class of interests if the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.[51]  The Prepackaged Plan satisfies section 1129(b)(2)(C) for Class 8 because no Class junior to Class 8 will receive or retain property under the Prepackaged Plan on account of such junior interest.  Moreover, such Existing Equity Interests will be cancelled, released and extinguished and shall receive no recovery under the Prepackaged Plan.

89.    Because the Prepackaged Plan satisfies both prongs of section 1129(b)(1) of the Bankruptcy Code, the Court may confirm the Prepackaged Plan if all requirements for confirmation, except those in section 1129(a)(8), are met.

---

[50] *See* 11 U.S.C. § 1129(b)(2).

[51] *See id.* 1129(b)(2)(C)(i)-(ii).

I.    **The Prepackaged Plan Provides for Payment in Full of All Allowed Priority Claims – 11 U.S.C. § 1129(a)(9)**

90.    Section 1129(a)(9) of the Bankruptcy Code requires that all claims entitled to priority pursuant to section 507(a) of the Bankruptcy Code be paid in full in cash unless the holders thereof agree to a different treatment.[52]  As required by that section, Article II.D of the Prepackaged Plan provides that each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

91.    Article II.A of the Prepackaged Plan provides that each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the later of: (1) the Effective Date or as soon a reasonably practicable; (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable, and in each case, with the consent of the Required Consenting Creditors; or (5) at such time and upon such terms as set forth in an order of the Court.

92.    Accordingly, the Prepackaged Plan complies with section 1129(a)(9) of the Bankruptcy Code.

---

[52] *See* 11 U.S.C. § 1129(a)(9).

**J.      At Least One Impaired, Non-Insider Class Has Accepted the Prepackaged Plan – 11 U.S.C. § 1129(a)(10)**

93.      Section 1129(a)(10) of the Bankruptcy Code requires that at least one impaired class of claims must accept the plan, excluding the votes of insiders.[53]  Here, as set forth in the Voting Certification, Classes 4 and 5 have accepted the Prepackaged Plan.  Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**K.      The Prepackaged Plan is Feasible – 11 U.S.C. § 1129(a)(11)**

94.      Pursuant to section 1129(a)(11) of the Bankruptcy Code, a chapter 11 plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[54]  This requirement is referred to as the "feasibility" of the Prepackaged Plan.

95.      To demonstrate that a plan is confirmable, it is not necessary for a debtor to guarantee success. The Debtors and their advisors analyzed the Debtors' ability to meet their respective obligations under the Prepackaged Plan, including completing conservative scenarios for both revenue growth and expense control.

96.      Upon the Effective Date, the Debtors' expected liquidity will be approximately $34 million, consisting of $1.6 million of unrestricted cash and $32.5 million available from the New Exit Facility, all of which will be available for use to satisfy ordinary expenses as well as obligations under the Prepackaged Plan.  The Debtors also have access to additional liquidity post-emergence because the New Exit Facility allows the Reorganized Debtors to borrow up to an additional $15 million, for a total available amount of $47.5 million.

---

[53] *See id.* § 1129(a)(10).

[54] *See id.* § 1129(a)(11).

97.     In addition to having available cash, the Debtors will emerge from bankruptcy having substantially deleveraged their capital structure, thereby allowing the Debtors to continue and improve their ongoing operations.  Upon emergence, the Reorganized Debtors are expected to have reduced their debt from approximately $274 million on the Petition Date up to a maximum amount of $47.5 million.  As a result, the Debtors will have substantially reduced debt service obligations through the equitization of the full amount of the Prepetition Term Loan Claims and the Prepetition Convertible Notes Claims.

98.     Based upon the assumptions used to develop the financial projections annexed to the Disclosure Statement as Exhibit F (the "Financial Projections"), the Reorganized Debtors will be able to make all payments required pursuant to the Prepackaged Plan and that confirmation of the Prepackaged Plan is not likely to be followed by a liquidation or the need for a further reorganization.  Specifically, the Financial Projections indicate that the $47.5 million New Exit Facility is sufficient to fund the Debtors' post-emergence liquidity needs until the Debtors become cash flow positive, which is projected to occur in the second half of 2025.

99.     Accordingly, subject to the Exit Lenders' final agreement on the terms of the New Exit Facility Documents and consummation of the Plan, the Debtors submit that the Prepackaged Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

**L.      All Statutory Fees Have Been or Will Be Paid – 11 U.S.C. § 1129(a)(12)**

100.     Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a chapter 11 plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."[55]  Article XII.C of the Prepackaged Plan provides

---

[55] See id. § 1129(a)(12).

for the payment, by either the Reorganized Debtor or the Disbursing Agent, of any fees due pursuant to section 1930 of title 28 of the United States Code or other statutory requirement until the earlier of entry of a final decree closing the Chapter 11 Cases or an order of dismissal or conversion, whichever comes first.  Therefore, the Prepackaged Plan meets the requirements of section 1129(a)(12) of the Bankruptcy Code.

### M.    Section 1129(a)(13) of the Bankruptcy Code Is Inapplicable

101.    Section 1129(a)(13) requires that a chapter 11 plan provide for the continued payment of certain retiree benefits "for the duration of the period that the debtor has obligated itself to provide such benefits."[56]  The Debtors have no obligation to provide any such retiree benefits, and, accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Prepackaged Plan.

### N.    Sections 1129(a)(14)–(16) of the Bankruptcy Code are Inapplicable

102.    None of the Debtors are (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.  Accordingly, sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable to the Prepackaged Plan.[57]

### O.    The Prepackaged Plan Is Not an Attempt to Avoid Tax Obligations – 11 U.S.C. § 1129(d)

103.    Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933 (the "Securities Act").[58]  The Prepackaged Plan meets these requirements because the principal purpose of the Prepackaged Plan is not the avoidance of taxes or the

---

[56] *See id.* § 1129(a)(13).

[57] *See In re Sea Launch Co., L.L.C.*, 2010 Bankr. LEXIS 5283, at *41 (Bankr. D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts that are '*not* moneyed, business, or commercial.'").

[58] *See* 11 U.S.C. § 1129(d).

avoidance of the application of the Securities Act, and no party in interest has filed an objection alleging otherwise. The principal purpose of the Prepackaged Plan is to effectuate the Debtors' orderly reorganization that will allow the unsecured creditors to be paid in full. Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## III.    CAUSE EXISTS TO WAIVE ANY STAY OF PROPOSED CONFIRMATION ORDER

104.    The Debtors request that the Court direct that the proposed Confirmation Order be effective immediately upon its entry, notwithstanding the 14-day stay imposed by operation of Bankruptcy Rules 3020(e) and 6004(h), as set forth in Article XII.A of the Prepackaged Plan. Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 3020(e). As such, and as the Advisory Committee notes to Bankruptcy Rule 3020(e) state, "the court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately." FED. R. BANKR. P. 3020(e), Adv. Comm. Notes, 1999 Amend. Similarly, Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use . . . of property other than cash collateral is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). The Advisory Committee Notes to Bankruptcy Rule 6004(h) (when it was codified as subsection (g)) similarly state that "[t]he court may, in its discretion, order that Rule 6004(g) is not applicable so that the property may be used . . . immediately." FED. R. BANKR. P. 6004(h), Adv. Comm. Notes, 1999 Amend.

105.    Under the circumstances, good cause exists for waiving the stays. It is appropriate for the Court to exercise its discretion to order that Bankruptcy Rules 3020(e) and 6004(h) are not applicable and to permit the Debtors to consummate the Prepackaged Plan and commence its

implementation without delay after the entry of the Confirmation Order. The Restructuring Transactions contemplated by the Prepackaged Plan, along with all transactions connected thereto, were extensively negotiated among sophisticated parties and have been accepted by each of the Voting Classes. Further, each day the Debtors remain in chapter 11, they incur significant administrative and professional costs. Finally, as set forth above, given the Debtors' extensive efforts to provide each of the Voting Classes, as well as their other stakeholders, with due process, staying the Confirmation Order will not serve any due process-related ends. Accordingly, the requested waiver of the stays will allow the Debtors to finalize the processes required for their Restructuring Transaction in a timely manner and will reduce disruption and incremental costs to the Debtors' business caused by these Chapter 11 Cases, and is therefore in the best interests of the Debtors' estates and creditors and will not prejudice any parties in interest.

## **CONCLUSION**

106. For the reasons set forth in this Memorandum, the Debtors respectfully request that the Court enter an order approving the Disclosure Statement and confirming the Prepackaged Plan, in substantially the form of the proposed Confirmation Order the Debtors have filed concurrently herewith.

*[Remainder of page intentionally left blank]*

Dated:  May 15, 2024
       Wilmington, Delaware

**COLE SCHOTZ P.C.**

*/s/ Michael E. Fitzpatrick*
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
preilley@coleschotz.com
snewman@coleschotz.com
mfitzpatrick@coleschotz.com

-and-

Michael D. Sirota (admitted *pro hac vice*)
David M. Bass (admitted *pro hac vice*)
Daniel J. Harris (admitted *pro hac vice*)
Matteo Percontino (admitted *pro hac vice*)
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
dbass@coleschotz.com
dharris@coleschotz.com
mpercontino@coleschotz.com

-and-

Bryant P. Churbuck (admitted *pro hac vice*)
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
bchurbuck@coleschotz.com

*Counsel for Debtors and*
*Debtors-in-Possession*